CHRISTOPHER C. HENIGE
8651 Hahn Road
Fredonia, NY 14063,

                            Plaintiff,

        Case No. 20-

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM
1860 Van Hise Hall
1220 Linden Dr.
Madison, WI 53706

JOHN BEHLING,
JOSÉ DELGADO,
TONY EVERS,
EVE HALL,
TIM HIGGINS,
MIKE JONES,
TRACEY KLEIN,
REGINA MILLER,
JANICE MUELLER,
DREW PETERSON,
RYAN RING,
BRYAN STEIL,
MARK TYLER,
GERALD WHITBURN,
in their personal capacities and official
capacities as Members of the Board of
Regents of the University of Wisconsin
System,

JESSICA LATHROP,
in her personal capacity and official capacity
as employee of the University of Wisconsin
System,

ELIZABETH OLSON,
ALVARO TAVEIRA,
ANTHONY GULIG,
RICHARD LEITHEISER,
BARBARA WESTON,

1

in their personal capacity and official capacity
as members of the Faculty Appeals,
Grievances, and Disciplinary Hearing
Committee of the University of Wisconsin-
Whitewater,

RICHARD TELFER,
BEVERLY KOPPER,
in their personal capacity and official capacity
as former Chancellors of the University of
Wisconsin-Whitewater

SUSAN ELROD,
GREG COOK,
ROBERT MERTENS,
SUSAN MESSER,
RENEE MELTON,
SARA KUHL,
SHANNON BRADBURY,
in their personal capacity and official capacity
as employees of the University of Wisconsin-
System,

       Defendants.

2

# COMPLAINT

COMES NOW the Plaintiff, Christopher C. Henige, "Plaintiff" and for his causes of action hereby alleges and states as follows: During and throughout the period between August of 2011 and February 12, 2017, continuing to the present, Plaintiff publicly commented on matters of public concern regarding actions of the Defendants: University of Wisconsin Board of Regents, and their agents. As a result, Plaintiff has suffered unlawful adverse employment actions in the form of loss of responsibilities and wages. Furthermore, during and prior to this period, Defendants unlawfully subjected Plaintiff to discrimination on the basis of his gender and on the basis of his disability.

## **INTRODUCTION**

1.        This is a civil rights action under 42 U.S.C, § 1983 and the First and Fourteenth Amendments to the United States Constitution, brought to remedy violations of the constitutional rights of the Plaintiff, Christopher C. Henige. The Defendants have maintained a pattern of conduct that unconstitutionally restricted the First Amendment rights of the Plaintiff by, among other things, retaliating against Plaintiff for his speech in the public interest through repeated disciplinary proceedings that deprived Plaintiff of property, and through his ultimate dismissal, effected by Defendants on February 12, 2018, that deprived Plaintiff of his property interest in his tenure.

2.        This action seeks declaratory and injunctive relief, monetary damages and attorneys' fees.

## JURISDICTION AND VENUE

3.　　　　Plaintiff Christopher C. Henige ("Plaintiff") is a male citizen of Fredonia, New York, but the events described herein occurred primarily in Whitewater, Wisconsin, in Walworth County, within the boundaries of the United States Eastern Federal District of the State of Wisconsin.

4.　　　　University of Wisconsin-Whitewater ("University") is a government entity, governed by the University of Wisconsin Board of Regents ("Regents"). At all times relevant, University was operating within the State of Wisconsin and within the Eastern Federal District of the State of Wisconsin.

5.　　　　The acts of Defendants and their agents alleged herein and giving rise to this action primarily occurred in Walworth County, State of Wisconsin and Dane County, State of Wisconsin.

6.　　　　Jurisdiction in this court is appropriate pursuant to 28 U.S.C. §1331, as Plaintiff's claims involve matters or issues under federal law.

7.　　　　Venue is appropriate in this court pursuant to 28 U.S.C. § 1391, as the Defendant conducts business and operations, and may be located and served within the boundaries of the Eastern District Federal Court of Wisconsin, and the substantial part of the events and/or emissions giving rise to this action occurred in the Eastern District of Wisconsin.

## PARTIES

8.　　　　Plaintiff is Christopher Henige, Ph.D., a tenured-faculty member in Department of Art and Design, within the College of Arts and Communication, at the University of Wisconsin-Whitewater, from August 2001 until his dismissal from his tenured position on

4

February 12, 2018. During that time, Plaintiff held the titles and positions of Assistant Chair of the Department of Art and Design and Chair of the Department of Art and Design.

9.     Defendant Board of Regents of the University of Wisconsin System ("Board") was at all times relevant to this complaint the governing body responsible for the University of Wisconsin-Whitewater. Its business address is 1860 Van Hise Hall, 1220 Linden Dr., Madison, WI 53706.

10.     Defendants John Behling, José Delgado, Tony Evers, Eve Hall, Tim Higgins, Mike Jones, Tracey Klein, Regina Miller, Janice Mueller, Drew Peterson, Ryan Ring, Bryan Steil, Mark Tyler, Gerald Whitburn, (collectively "Regents") were at the time of Plaintiff's dismissal on February 12, 2018, members of the Board of Regents of the University of Wisconsin System. Each of them is sued in their personal capacities and their official capacities as Board Members.

11.     Defendant Jesse Lathrop was at the time of Plaintiff's dismissal on February 12, 2018, Executive Secretary of the Board of Regents of the University of Wisconsin System. She is sued in her personal capacity and her official capacity.

12.     University of Wisconsin-Whitewater ("University") is a subdivision of the Wisconsin State Government, organized under the Constitution of the State of Wisconsin, organized and controlled pursuant to the Statutes of the State of Wisconsin. Its business address is 800 West Main Street, Whitewater, WI, 53190.

13.     Defendants Richard Telfer and Beverly Kopper were at times relevant to this complaint Chancellor of the University of Wisconsin-Whitewater. They are sued in their personal capacities and her official capacities.

5

14.     Defendant Susan Elrod, was at the time of Plaintiff's dismissal on February 12, 2018, Provost of the University of Wisconsin-Whitewater. She is sued in her personal capacity and her official capacity.

15.     Defendant Greg Cook, was at the time of Plaintiff's dismissal on February 12, 2018, Assistant Vice Chancellor of Academic Affairs of the University of Wisconsin-Whitewater. He is sued in his personal capacity and his official capacity.

16.     Defendant Sara Kuhl, was at the time of Plaintiff's dismissal on February 12, 2018, Vice Chancellor of Marketing and Media Relations of the University of Wisconsin-Whitewater. She is sued in her personal capacity and her official capacity.

17.     College of Arts and Communication ("College") is a subdivision of the University, and therefore of Wisconsin State Government, organized under the Constitution of the State of Wisconsin, organized and controlled pursuant to the Statutes of the State of Wisconsin. Its business address is Greenhill Center of the Arts, 800 West Main Street, Whitewater, WI, 53190.

18.     Defendant Robert Mertens, was at the time of Plaintiff's dismissal on February 12, 2018, Associate Dean of the College of Arts and Communication of the University of Wisconsin-Whitewater. He is sued in his personal capacity and his official capacity.

19.     Department of Art and Design ("Department") is a subdivision of the University and the College, and therefore of Wisconsin State Government, organized under the Constitution of the State of Wisconsin, organized and controlled pursuant to the Statutes of the State of Wisconsin. Its business address is 2073 Greenhill Center of the Arts, 800 West Main Street, Whitewater, WI, 53190.

6

20.     Defendants Susan Messer and Renée Melton, were at the time of Plaintiff's dismissal on February 12, 2018, faculty members in the Department of Art and Design at the University of Wisconsin-Whitewater. They are sued in their personal capacities and their official capacities.

21.     Defendant Shannon Bradbury, was at the time of Plaintiff's dismissal on February 12, 2018, Labor Relations Manager of the University of Wisconsin-Milwaukee. She is sued in her personal capacity and her official capacity.

22.     All individuals named herein were at all times relevant to this complaint employed by, and served as agents of, Regents.

23.     At all times pertinent and with respect to all matters alleged herein, all individuals named herein acted under color of state law.

## ALLEGATIONS OF FACT

16.     Plaintiff was employed by the Defendant UW since August 2001, serving in the Department of Art and Design, progressively, in the capacities of Assistant Professor, Associate Professor, Assistant Department Chair, and Department Chair.

17.     Plaintiff was employed as Assistant Chair of the Department of Art and Design from about July 2007 to June 2008, during which time he coordinated the Department's efforts to gain accreditation of its programs from the National Association of Schools of Art and Design (NASAD), and authored the self-study which ultimately resulted in accreditation.

18.     Plaintiff was employed as Chair of the Department of Art and Design from about July 2008 to June 2011, the normal three-year term for a department chair, during which time he was responsible for the day-to-day operations of the Department, for scheduling

7

courses, for advising students, for managing budgets and personnel, for maintaining accreditation data, among other duties.

19.     During the course of his employment, Plaintiff served on the University's General Education Review Committee and served as its chair, on the University Curriculum Committee, on the Instructional Technology Advisory Group, and as a member of the Faculty Senate, among other duties at the College and Departmental levels.

20.     During the course of his employment, Plaintiff received awards for teaching, service to general education, and was inducted into the Phi Kappa Phi honor society.

21.     During the course of his employment, Plaintiff was viewed by students and colleagues as an innovator in teaching and a champion of student and faculty rights.

## FIRST AMENDMENT

22.     During the course of his employment, Defendant UW subjected Plaintiff to disciplinary actions including his dismissal in retaliation for his engagement in protected speech on matters of public concern.

23.     Plaintiff Henige made numerous public statements critical of UWW administrators and administrative actions in the period from August 2011 until February 12, 2018, the date Defendant UW executed Plaintiff's dismissal from his tenured position.

24.     Between August 2011 and February 12, 2018, Plaintiff conveyed to administrators concerns reported to him by students that they were being delayed in their graduation by a lack of available required courses.

25.     The University publishes that the art history major requires 120 credits, and considers programs that require 120 credits "four-year" programs. Based on data provided to Plaintiff by the University, credits to degree in the art history major increased from an average of

8

135.5 credits between 1993 and 2011, to an average of 146.6 credits between 2011 and 2017, an average increase of 11.1 credits per student. Time to degree increased from an average of 9 semesters between 1993 and 2011, to an average of 10.6 semesters between 2011 and 2017, an average increase of 1.6 semesters.

26.     Plaintiff conveyed to administrators concerns reported to him by Bachelor of Fine Arts students that they were being delayed in their graduation by circumstances within the control of the faculty. Plaintiff raised concerns to administrators that time-to-degree and credits-to-degree for the Bachelor of Fine Arts programs were much higher than the University promises.

27.     The University publishes that the Bachelor of Fine Arts majors in Studio Art require 125 credits, just five credits more than programs it considers "four-year" programs. Based on data provided to Plaintiff by the University, between 2014 and 2017, credits to degree for students in these majors averaged 148.15 credits, an average of 23.15 credits more than the University requires, and time to degree averaged 11.27 semesters, 3.27 semesters longer than such a program should require. These averages are well above institutional averages for all programs.

28.     Plaintiff's observations were corroborated by the University's own Audit and Review Committee, who in 2015 asked "compared to other programs, the credits to degree for the BFA seem high (especially in 2012, 159 credits, and 2013, 158 credits). Why?"

29.     Plaintiff conveyed to administrators concerns he had that the art history major did not meet the standards published by the accrediting body for that program, the National Association of Schools of Art and Design ("NASAD"), and that staffing shortages and other factors suggested to Plaintiff that the program could never meet those standards.

9

30.    NASAD confirmed Plaintiff's concerns in their own reports: "the degree plan does not appear to actually require familiarity with non-Western art (NASAD Handbook 2013-2014, VII E. 4. D.)", "the team was not unable to determine clearly that all art history majors graduate with sufficient concentrated study in at least one area to the advanced seminar level, and sufficient functional knowledge of the creative process…", and "a critical need for faculty appears to be in the area of art history…considering the extent of these programmatic responsibilities to the major and the department's other baccalaureate programs, two full time faculty (one recently vacated) offering courses split between the major requirements and General Education, seems inappropriate for the professional degrees offered. Providing the range of advanced level courses on a regular basis seems problematic."

31.    On February 12, 2017, in their Decision and Order formalizing Plaintiff's termination, Defendants cited as evidence of "just cause" for his termination that Plaintiff had "asked of the Department 'Is there an honest belief that we can meet accreditation standards?'"

32.    Plaintiff conveyed to administrators concerns reported to him by students that important reviews of student progress were not being conducted in the same manner as published in the Undergraduate Catalog and as presented to them in handouts provided by the Department, and that they had been disadvantaged by a different process they were not prepared for.

33.    Plaintiff expressed numerous concerns regarding a junior colleague in art history, faculty member Deborah Wilk, directly and only to her immediate supervisors, concerns relating to her performance relative to the Department's service to its students.

34.    On February 12, 2017, in their Decision and Order formalizing Plaintiff's termination, Defendants cited as evidence of "just cause" for his termination that by making

10

these observations about Wilk's performance to only her immediate supervisors Plaintiff was "personally attacking Wilk, including accusing her of doing little work." Defendants did not argue that Plaintiff's statements were false, only that making them to only her immediate supervisors provided just cause for his dismissal.

35.     Plaintiff expressed concerns regarding academic staff member Michael Flanagan and actions he took while serving in the capacity of interim department chair, including that he had knowingly violated a non-contact order by initiating contact with Plaintiff, then reported to others that it was Plaintiff who had violated the order. Plaintiff provided documentation supporting his position to the faculty.

36.     On February 12, 2017, in their Decision and Order formalizing Plaintiff's termination, Defendants cited as evidence of "just cause" for his termination that by making these observations about Flanagan's actions Plaintiff was "attacking Mark [sic] Flanagan". Defendants did not argue that Plaintiff's statements were false, only that making them provided just cause for his dismissal.

37.     Plaintiff conveyed to administrators, colleagues, and the Chair of the Faculty Senate about concerns he had about the failures of administrators and faculty to comply with the requirements published in the Faculty Personnel Rules.

38.     Plaintiff submitted several opinion pieces to the school newspaper, the Royal Purple, about the failures of administrators and faculty to comply with the requirements published in the Faculty Personnel Rules and criticizing changes to these rules which had stripped the faculty of most of the existing "rights and protections" which Plaintiff had been consistently denied.

11

39.     Plaintiff conveyed to administrators and colleagues concerns he had that administrators were advising faculty that records relating to past disciplinary matters were private and "unknowable". Plaintiff informed the faculty that any documents related to any personnel actions on campus become a matter of public record once the investigation is complete. Plaintiff provided faculty with a link to the Wisconsin Open Records Law Compliance Guide for their reference.

40.     On February 12, 2017, in their Decision and Order formalizing Plaintiff's termination, Defendants cited as evidence of "just cause" for his termination that Plaintiff "asserted that members of the department and the administration (Mertens, Messer, Melton, Dale, Flanagan, Cook, McPhail, Wilk, and Provost Elrod) were deceiving department members about privacy of information." Defendants did not argue that Plaintiff's statements were false, only that making them provided just cause for his dismissal.

41.     Plaintiff disclosed to the faculty that they were in violation of Wisconsin Open Meetings Law because they attended meetings from which Plaintiff had been unlawfully excluded under threat of disciplinary action. Plaintiff informed the faculty about the language of Wis. Stats. 19.89 and that under Wis. Stats. 19.96 they may be subject to fines as a result of knowingly participating in such meetings.

42.     On February 12, 2017, in their Decision and Order formalizing Plaintiff's termination, Defendants cited as evidence of "just cause" for his termination Plaintiff's citation of Wisconsin Open Meetings Law, in particular the penalties for violation of said law. Defendants did not argue that Plaintiff's statements were false, only that making them provided just cause for his dismissal.

12

43.     No claims were ever made that anything Plaintiff said in any of his communications was false, and no one ever demonstrated at any disciplinary hearing that anything Plaintiff said in any of his communications was false.

44.     None of Plaintiff's communications contained any insults, epithets, expletives or any language of a personal nature. All of Plaintiff's emails solely addressed University business, and solely addressed matters of public concern, whether it be failures in service to the students or the corruption of public officials.

45.     On October 27, 2017, the hearing panel in Plaintiff's dismissal case justified their recommendation that Plaintiff be dismissed on the basis of his speech, stating "definitions for protected speech are not in effect at UW-Whitewater".

46.     On February 12, 2018, Plaintiff was dismissed for reasons including, but not limited to, his repeated exercise of First Amendment protected speech.

47.     The termination of his position as tenured associate professor is reflective of the animus Defendants possess for Plaintiff's protected activities, and is, on its face, retaliation.

**DUE PROCESS**

48.     During the course of his employment, Defendant UW subjected Plaintiff to numerous violations of his constitutional rights to due process.

49.     During the course of his employment, Defendant UW subjected Plaintiff to numerous disciplinary proceedings that were not compliant with the Faculty Personnel Rules which govern such proceedings and were not compliant with Wisconsin open meetings laws.

50.     Specifically, on June 20, 2013, Chancellor Telfer issued a "letter of counseling" in direct response to a complaint filed by McPhail and McGuire that was untimely,

13

an action later defined by Defendants Regents as part of "progressive discipline". Telfer never informed Plaintiff of the existence of the formal complaint as required under Wis. Stats. UWS 6..01(3), and represented it as nothing more than a "letter".

51.     On February 12, 2018, in their Decision and Order dismissing Plaintiff from his tenured position, Defendants stated that "for each discipline, [Plaintiff] Henige received the due process provided for in the applicable rules."

52.     Between December 30, 2013 and May 12, 2014, Chancellor Telfer violated Faculty Personnel Rules during proceedings which followed complaints filed by McPhail, including but not limited to:

    a)     Telfer accepted as "valid" a complaint that did not meet the requirements in the Faculty Personnel Rules for valid complaints;

    b)     Telfer issued a charge that did not meet the requirements for such published in the Faculty Personnel Rules;

53.     On February 12, 2018, in their Decision and Order dismissing Plaintiff from his tenured position, Defendants stated that "for each discipline, [Plaintiff] Henige received the due process provided for in the applicable rules."

54.     The McPhail complaint resulted in Plaintiff's suspension without pay for three days, among other sanctions.

55.     Between February 17, 2015, and June 29, 2015, Chancellor Telfer and a hearing panel comprising Penny Portman (chair), Greg Valde, William Skelly, Anne Stinson and Robert Horton ("Portman Panel") violated numerous Faculty Personnel Rules during proceedings which followed complaints filed by McPhail and Messer, including but not limited to:

14

a)   Proceeding when the Chancellor's charge did not meet the requirements for such a charge published in the Faculty Personnel Rules;

b)   Failing to name two alternate panelists, and include them in the proceedings as required by the rules;

c)   Allowing the proceedings to continue after Telfer had not responded within the required deadline for doing so;

d)   Engaging counsel when three separate rules prohibited the panel from doing so if Henige did not have counsel himself;

e)   Setting time limits on Henige's ability to confront and cross-examine adverse witnesses and present his own defense when the rules required "complete and comprehensive" proceedings;

f)   Allowing McPhail, the complainant, to act as prosecutor, which provided him access to information about the charges to which he was not entitled under the rules;

g)   Failing to comply with open meetings laws regarding public notice of hearings;

h)   Failing to include language in their notice of hearing that was required by the rules;

i)   Conducting hearings 42 and 49 days respectively after the 60-day deadline for conducting hearings under the rules had passed;

15

j)      Conducting two hearings with only four panelists after one panelist dropped out and no alternates were named, when the rules required a "five member panel";

k)      Receiving testimony from individuals who had no firsthand knowledge of the events in question, in violation of the plain language of the rules;

l)      Conducting a hearing on the penalties 22 days after the 14-day deadline for doing so under the rules had passed, and conducting said hearing after the contract period for nine-month employees, including Henige and some of the panelists, had expired. Panelists were paid by the University to participate in this off-contract hearing.

56.     The McPhail/Messer complaint resulted in Plaintiff's suspension without pay for one month, among other sanctions.

57.     On October 29, 2014, following Plaintiff's speech on matters of public concern at Department meetings, Provost Beverly Kopper and Director of Human Resources Judith Trampf imposed a document titled "Meeting Rules of Conduct" on the Department. This document gave complete authority to Department Chair Renée Melton to determine what could and could not be discussed at Department meetings, required everyone to contribute, and warned participants to "watch your body language", stating "it is not acceptable to roll eyes, sit cross-armed or shake your head while others are speaking". These rules were not formally implemented in the Department as a whole until January 15, 2015, when they were read aloud without discussion.

16

58.     Plaintiff was accused of having "violated" the "Meeting Rules of Conduct" prior to January 15, 2015, and upon information and belief, these "rules" were applied to no one other than Plaintiff between October 2014 and January 2015. Upon information and belief, the Office of the Provost has never rescinded these "rules", and they remain in effect to the date of this filing.

59.     Following a request by Plaintiff to add items to the agenda for an upcoming meeting, Melton filed a petition for temporary restraining order against Plaintiff in which the entire contents dealt with Melton's concerns about Plaintiff's criticism of her performance as department chair. There was no content that was not University-related, and no content that described any events that occurred outside the University.

60.     On January 26, 2015, the Walworth County Court Commissioner dismissed all of Melton's claims and declined to issue an injunction against Plaintiff, stating "We expect our professors to criticize each other, to debate, to question authority...the actions themselves fall under the realm of educational employment in a university setting...the actions themselves, the actions of criticizing, debating, and questioning authority do serve a legitimate purpose...".

61.     On February 12, 2018, in their Decision and Order dismissing Plaintiff from his tenured position, Defendants stated that "for each discipline, [Plaintiff] Henige received the due process provided for in the applicable rules."

62.     Between September 14, 2015, and November 24, 2015, Chancellor Telfer, Chancellor Kopper, and a hearing panel comprising Hephzibah Kumpaty (chair), Kathy Brady, Myung Hee Chung, John McGuigan, and Rick Mason ("Kumpaty Panel") violated

17

numerous Faculty Personnel Rules during proceedings which followed a complaint filed by Melton including but not limited to:

a) Proceeding when the Chancellor's charge did not meet the requirements for such a charge published in the Faculty Personnel Rules;

b) Failing to name two alternate panelists, and include them in the proceedings as required by the rules;

c) Engaging counsel when three separate rules prohibited the panel from doing so if Henige did not have counsel himself;

d) Allowing the proceedings to continue when Telfer had not complied with the plain language of the rules and had not provided all evidence that would be used against Henige with his charge;

e) Allowing the University to impose certain of the proposed penalties against Henige before any hearings, when the rules stated that "the faculty member may…request a hearing on the charges in which case the penalty(ies) and/or remedy(ies) shall be held in abeyance until the completion of the hearing process";

f) Setting time limits on Henige's ability to confront and cross-examine adverse witnesses and present his own defense when the rules provided for "complete and comprehensive" proceedings;

g) Withholding exculpatory evidence, specifically that between August 2015 and September 29, 2015, Denis Dale, the immediate supervisor of Melton, Plaintiff's primary accuser who testified at

18

the hearing relative to this complaint, had expressed to Interim Dean Robert Mertens, Director of Human Resources Judi Trampf, and to the Office of General Counsel that he had concerns about Melton's mental state, and that she was "ultrasensitive" about any comments made to her by "whoever else she's pointing to who happens to be male", and that "it's harder for me to talk to her right now than anybody else, because I have to watch every word, for how she might misunderstand how I said the word";

h) Receiving testimony from individuals who had no firsthand knowledge of the events in question, in violation of the plain language of the rules;

i) Failing to comply with open meetings laws regarding public notice of hearings;

j) Conducting a hearing with a new panelist who was not a named alternate after one panelist dropped out and no alternates were named, and denying Plaintiff his right under published University policy to disqualify said panelist;

k) Conducting a hearing 25 days after the latest date permitted by the Faculty Personnel Rules, rules which stated that a hearing must occur within 60 days, and also stated that their purpose was to "assure fair, just, and timely handling of complaints";

l) Relying on testimony by Melton that was perjured and unsubstantiated by corroborating testimony;

19

m)      Increasing the penalties against Plaintiff after all hearings and

opportunity to appeal had passed, changing Telfer's initial penalty

of mediated correspondence for the "academic year 2015-2016",

an academic year being 9 months, to "beginning immediately

[January 4] and continuing through the academic year, 2016-

2017", or almost 17 months.

63.     The Melton complaint resulted in Plaintiff's suspension without pay for one semester, among other sanctions.

64.     During the course of his employment, Plaintiff was relocated from his office by Mertens without hearing or due process, with the purpose of intimidating, harassing and retaliating against him.

65.     During the course of his employment, Plaintiff was relocated from his traditional classroom to classrooms unsuited to the teaching of art history by Mertens, with the purpose of intimidating, harassing and retaliating against him. As a result, Plaintiff was unable to perform duties relating to students in his function as an instructor during this time.

66.     During the course of his employment, Defendant UW subjected Plaintiff to disciplinary proceedings that were not compliant with State statutes relating specifically to due process for such proceedings and were not compliant with Wisconsin open meetings laws.

67.     On February 12, 2018, in their Decision and Order, Defendants stated that "In accordance with the provisions of UWS Chapter 4 and the implementing policies of UW-Whitewater, a full evidentiary hearing on the charges was held before a faculty hearing panel on September 8, 2017" and that "[Plaintiff] Dr. Henige has been afforded the due process and procedural guarantees required by UWS Chapter 45, Wisconsin Administrative Code."

68.     Between February 21, 2017, and February 12, 2018, Chancellor Kopper, and a hearing panel comprising Elizabeth Olson (chair), Robert Leitheiser, Anthony Gulig, Alvaro Taveira, and Karen Weston ("Olson Panel") violated numerous State statutes and University policies and procedures during proceedings which followed complaint filed by Mertens, including but not limited to:

a)     Failure to maintain a "standing committee" to hear dismissal cases as required by Wis. Stats. UWS 4.03;

b)     Forming a hearing panel in a manner inconsistent with the published University policies for doing so;

c)     Conducting pre-hearing business during the off-contract period for nine-month employees;

d)     Interfering with Plaintiff's ability to "offer witnesses" under Wis. Stats. UWS 4.05(1)(d) by instructing IT to block Plaintiff's emails to his potential witnesses;

e)     Withholding exculpatory evidence, specifically that the University had hired an outside consultant to investigate the culture of the Department, and that in her recommendation report dated August 28, 2016, which Plaintiff requested through an open records request but which was not provided to him until after his dismissal, the consultant barely mentioned Plaintiff, and placed no responsibility on Plaintiff for the dysfunction which persisted in the Department long after Plaintiff had had any presence in that Department;

21

f)     Withholding exculpatory evidence, specifically that on April 17, 2017, Greg Cook, Assistant Vice Chancellor of Academic Affairs, a PhD psychologist and the immediate supervisor of Melton, one of Plaintiff's principal accusers, had characterized Melton's perceptions as "mythologies…misconceptions, conspiracy and paranoia";

g)     Conducting a hearing for which proper and legal public notice under open meetings laws was not given;

h)     Denying Plaintiff his right to "confront and cross-examine adverse witnesses" under Wis. Stats. UWS 4.05(1)(e), by refusing to issue subpoenae, admitting written statements in lieu of in-person testimony from persons who were physically in attendance at the hearing, persons who were not called and could not be cross-examined, and by relying on the hearsay testimony of administrators who testified to what "others" told them but refused to identify who those "others" were;

i)     Placing time limits on testimony despite Wis. Stat. 227.45(1), which states "the agency or hearing examiner shall admit **all** testimony having reasonable probative value" (emphasis added);

j)     Refusal to specify to Plaintiff the standard of proof that would be used at the hearing;

22

k)      Failure to meet the "burden of proof" required by Wis. Stats. UWS
        4.06(1)(a), because the standard of proof was never defined by the
        Olson Panel;

l)      Relying on testimony by Telfer, Bradbury, Cook and Mertens that
        was demonstrated to be perjured either during the hearing itself or
        through comparison of the testimony with the documentary
        evidence;

m)      Withholding exculpatory evidence, specifically that on September
        13, 2017, five days after Plaintiff's dismissal hearing, and during
        the period the Olson Panel was deliberating, in response to a
        complaint filed against Melton for allegedly assaulting two
        colleagues in the hallway, Melton's own attorney responded to a
        claim that Melton had "an unstable mental state" by stating Melton
        "responds to this charge that she has an unstable mental state on
        the basis that if it was true, and if the University as an employer
        was to discipline or dismiss her for that reason, it would have
        engaged in illegal discrimination based upon a disability";

n)      Failure of Defendants Regents to consult with Chancellor Kopper
        and/or the Olson Panel as required by Wis. Stats. UWS 4.08(2)
        after their actions were "different from the faculty hearing
        committee and/or the chancellor".

69.     Throughout all of the proceedings against Plaintiff, the Defendants
provided no specificity regarding the exact conduct that was determined to be subject to

23

discipline, using terms like "conduct" and "behavior" rather than specifying exactly which "conduct" and which "behavior", offering only vague, non-specific and shifting allegations.

70.     Throughout many of the proceedings against Plaintiff, Defendants failed to provide hearings at a meaningful time and in a meaningful manner.

71.     Throughout many of the proceedings against Plaintiff, Defendants repeatedly interfered with Plaintiff's ability to present witnesses, and to confront and cross-examine witnesses.

72.     Throughout many of the proceedings against Plaintiff, Defendants withheld evidence that tended to exculpate him.

73.     On February 12, 2018, Plaintiff was dismissed following a series of proceedings during which the repeated and willful violation of the Faculty Personnel Rules, State statutes, and other fundamental constitutional rights by Defendants created in the tribunals a likelihood of actual bias so impermissibly high that it could not be considered constitutionally tolerable.

## DISCRIMINATION BASED ON SEX

74.     During the course of his employment, Defendant UW subjected Plaintiff to a hostile work environment in the form of sex discrimination.

75.     Specifically, during the course of his employment, Defendants McPhail, McGuire, Messer and Melton filed a total of at least 19 claims against Plaintiff of either "sexual harassment" or "discrimination based on sex".

76.     No one ever alleged any sexual conduct of any kind against Plaintiff. Each and every allegation of discrimination was investigated by the appropriate authorities and dismissed.

24

77.     During the course of his employment, Defendant UW repeatedly dismissed said allegations, but upon information and belief took no action to put a stop to said allegations, and thus permitted the creation of an ongoing hostile work environment for all males in the Department of Art and Design. Upon information and belief, none of the individuals who made the false allegations were ever disciplined in any way.

78.     None of Plaintiff's communications contained any language that might be interpreted as discriminatory. No one ever demonstrated at any disciplinary hearing in any venue that anything Plaintiff said in any of his communications was discriminatory.

79.     On February 12, 2018, Plaintiff was dismissed for reasons including, but not limited to, claims by Defendants that Plaintiff "denigrated female colleagues", despite every and all such allegations against Plaintiff having been dismissed by Defendants themselves.

80.     Plaintiff filed an employment charge with the U. S. Equal Employment Opportunity Commission against the Defendant University of Wisconsin-Whitewater, under Title VII of the U.S. Civil Rights Act of 1964 for gender discrimination, and under the Americans with Disabilities Act for discrimination based on disability. Plaintiff received a letter of Notice of Right to Sue on October 7, 2019.

## DISCRIMINATION BASED ON DISABILITY

81.     During the course of his employment, Defendant UW subjected Plaintiff to discrimination based on his disability.

82.     Specifically, on June 21, 2016 and August 28, 2017, Plaintiff filed Request for Disability Accommodations forms to Defendant UW. On July 13, 2016 and August 30, 2017, Defendant Kopper issued letters of assignment to Plaintiff in direct response to those requests. Kopper's letters consented to the only accommodation requested by Plaintiff, that his

25

courses be moved online due to temporary mobility issues, but also preconditioned said accommodation on Plaintiff's willingness to accept other conditions which were not requested and which violated his legal rights. Defendant Kopper threatened that failure to comply with said conditions would result in disciplinary action up to and including Plaintiff's dismissal.

83.　　　On February 12, 2018, Plaintiff was dismissed for reasons including, but not limited to, that Plaintiff was found to have been "insubordinate" to Defendant Kopper's directives that conditioned necessary disability accommodations on Plaintiff's willingness to accept other conditions which were not requested and which violated his legal rights.

84.　　　Plaintiff filed an employment charge with the U. S. Equal Employment Opportunity Commission against the Defendant University of Wisconsin-Whitewater, under Title VII of the U.S. Civil Rights Act of 1964 for gender discrimination, and under the Americans with Disabilities Act for discrimination based on disability. Plaintiff received a letter of Notice of Right to Sue on October 7, 2019.

## TORTIOUS INTERFERENCE

85.　　　During the course of his employment, Defendant UW interfered with Plaintiff's ability to seek substantially similar employment elsewhere.

86.　　　Until December 6, 2013, Plaintiff had a demonstrated record of successful performance in the fulfillment of his responsible duties at UW-Whitewater.

87.　　　During the period between December 6, 2013 and Plaintiff's dismissal on February 12, 2018, Defendant UWW did not conduct any reviews of any kind of Plaintiff's performance in teaching, research and service.

26

88.     On February 12, 2018, Defendant UW issued its Decision and Order which resulted in Plaintiff's dismissal from his tenured position. That document, published on Defendant Regents' website, contains countless errors of fact and intentional falsifications.

## I. THE FIRST AMENDMENT, 42 U.S.C. §1983

89.     Plaintiff adopts and incorporates paragraphs 1-88 above, as if fully set forth herein, and further states the following:

90.     In their official and/or individual capacities, the actions of all Defendants named herein, which resulted in the decision of Defendants Regents to terminate Plaintiff's employment, the roles, responsibilities and wages therein lost, the expressed and unexpressed cause for the action being Plaintiff's protected speech, violated his First Amendment rights.

91.     As a result, Plaintiff is entitled to recover lost wages – back and future, damages for emotional pain and suffering, attorney's fees and costs, and pre-judgment interest in excess of $275,000.

92.     Defendants made every effort to silence Plaintiff's concerns about the defrauding of students by incompetent and corrupt officials by exploiting the culture of lawlessness which pervades the University of Wisconsin System. Because the actions of all named Defendants were willful, intentional and malicious, reprehensible and in bad faith, Plaintiff is entitled to punitive damages in excess of $66 million.

## II. DUE PROCESS, FIFTH AND FOURTEENTH AMENDMENTS, 42 U.S.C. §1983

93.     Plaintiff adopts and incorporates paragraphs 1-88 above, as if fully set forth herein, and further states the following:

94.     This cause of action is against presented by Plaintiff against Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Bradbury, Cook, Mertens, Kuhl and Kopper.

95.     The acts of Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Bradbury, Cook, Mertens, Kuhl and Kopper violated Plaintiff's constitutional rights to due process.

96.     As a result, Plaintiff is entitled to recover lost wages – back and future, plus liquidated damages along with attorney's fees and costs, pre-judgment interest and any other relief the Court deems appropriate in excess of $275,000.

97.     Defendants made every effort to silence Plaintiff's concerns about the defrauding of students by incompetent and corrupt officials by exploiting the culture of lawlessness which pervades the University of Wisconsin System. Because the actions of Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Bradbury, Cook, Mertens, Kuhl and Kopper were willful, intentional and malicious, reprehensible and in bad faith, Plaintiff is entitled to punitive damages in excess of $66 million.

### III. DISCRIMINATION BASED ON SEX

98.     Plaintiff adopts and incorporates paragraphs 1-88 above, as if fully set forth herein, and further states the following:

99.     This cause of action is against presented by Plaintiff against Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring,

28

Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Messer and Melton.

100.    The acts of Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Messer and Melton discriminated against Plaintiff on the basis of his sex.

101.    As a result, Plaintiff is entitled to recover lost wages – back and future, plus liquidated damages along with attorney's fees and costs, pre-judgment interest and any other relief the Court deems appropriate in excess of $275,000.

102.    Defendants made every effort to silence Plaintiff's concerns about the defrauding of students by incompetent and corrupt officials by exploiting the culture of lawlessness which pervades the University of Wisconsin System. Because the actions of Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Messer and Melton were willful, intentional and malicious, reprehensible and in bad faith, Plaintiff is entitled to punitive damages in excess of $66 million.

## IV. DISCRIMINATION BASED ON DISABILITY

103.    Plaintiff adopts and incorporates paragraphs 1-88 above, as if fully set forth herein, and further states the following:

104.    This cause of action is against presented by Plaintiff against Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Elrod and Mertens.

29

105.     The acts of Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Elrod and Mertens discriminated against Plaintiff on the basis of his disability.

106.     As a result, Plaintiff is entitled to recover lost wages – back and future, plus liquidated damages along with attorney's fees and costs, pre-judgment interest and any other relief the Court deems appropriate in excess of $275,000.

107.     Defendants made every effort to silence Plaintiff's concerns about the defrauding of students by incompetent and corrupt officials by exploiting the culture of lawlessness which pervades the University of Wisconsin System. Because the actions of Defendants Regents, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Elrod and Mertens were willful, intentional and malicious, reprehensible and in bad faith, Plaintiff is entitled to punitive damages in excess of $66 million.

## V. TORTIOUS INTERFERENCE OF BUSINESS RELATIONS, PURSUANT TO THE COURT'S SUPPLEMENTAL JURISDICTION, 28 U.S.C. §1367

108.     Plaintiff adopts and incorporates paragraphs 1-88 above, as if fully set forth herein, and further states the following:

109.     This cause of action is against presented by Plaintiff against Defendants Regents, Lathrop, Telfer, Kopper, Elrod, Mertens, Messer and Melton.

110.     The acts of Defendants Regents, Lathrop, Telfer, Kopper, Elrod, Mertens, Messer and Melton tortiously interfered with his future business opportunities by retaliating against him and punishing him for his constitutionally protected conduct.

30

111.     Defendants made every effort to silence Plaintiff's concerns about the

defrauding of students by incompetent and corrupt officials by exploiting the culture of

lawlessness which pervades the University of Wisconsin System. Because Defendants Regents,

Lathrop, Telfer, Kopper, Elrod, Mertens, Messer and Melton actions were willful, intentional and

malicious, reprehensible and in bad faith, Plaintiff is entitled to punitive damages in excess of

$66 million.


**RESPECTFULLY SUBMITTED THIS 2ND DAY OF JANUARY, 2020.**


                                        **Respectfully,**


                                        s/Christopher C. Henige
                                        8651 Hahn Road
                                        Fredonia, NY  14063
                                        Telephone: (716) 680-8090
                                        *Pro se*


31