IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER C. HENIGE,

        Plaintiff,

    v.                                Case No. 20CV0006

BOARD OF REGENTS OF UW SYSTEM
ET AL. ,

        Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

In January of 2020, Plaintiff, Dr. Christopher Henige, a former tenured Associate Professor at University of Wisconsin Whitewater (UW-W) filed this broad ranging lawsuit naming 30 individual defendants and pursuing relief under five separate legal theories. Although Henige's case involves many factual allegations and claims, it boils down to whether the Defendants' actions, culminating in the termination of Henige's employment in February of 2018, were legal and whether Henige was provided with adequate due process in challenging the termination of his employment.

For the reasons detailed below, Henige fails to state a claim for any cause of action listed in his complaint and this Court should dismiss his complaint in its entirety.

## RELEVANT FACTS

### A. Parties

Plaintiff, Dr. Christopher Henige was a tenured professor in the Department of Art and Design (Department) at UW-W until February 12, 2018.[1] The Board of Regents of the University Wisconsin System (Board or Board of Regents) is the governing body for UW system, including UW-W.[2] Defendants John Behling, Jose Delgado, Tony Evers, Eve Hall, Tim Higgins, Mike Jones, Tracey Klein, Regina Miller, Janice Mueller, Drew Peterson, Ryan Ring, Bryan Steil, Mark Tyler, and Gerald Whitburn were members of the Board on February 12, 2018.[3] Defendant Jessica Lathrop was the Executive Secretary for the Board on February 12, 2018.[4] Defendants Richard Telfer and Beverly and Beverly Kopper were chancellors at UW-W at different times during the period giving rise to the claims in this Complaint.[5] Susan Elrod was the UW-W provost on February 12, 2018.[6]  Greg Cook was the Assistant Vice

[1] Dkt. 1:4-5 at ¶ 8.
[2] Dkt. 1:5 at ¶ 9.
[3] Dkt. 1:5 at ¶ 10.
[4] Dkt. 1:5 at ¶ 11.
[5] Dkt. 1:5 at ¶ 13.
[6] Dkt. 1:6 at ¶ 14.

Chancellor of Academic Affairs on February 12, 2018.[7] Robert Mertens was the Associate Dean of the College of Arts on February 12, 2018.[8,9] Susan Messer and Renee Melton were faculty members of the Department of Art and Design.[10] Sara Kuhl was the Vice Chancellor of Marketing and Media on February 12, 2018.[11] Shannon Bradbury was the Labor Relations Manager.[12] Kopper, Elizabeth Olson, Alvaro Taveira, Anthony Gulig, Richard Leitheiser and Barbara Weston were members of the Faculty Appeals, Grievance, and Disciplinary Hearing committee from February 2017 to February 2018, and participated in the Faculty Hearing Panel on September 8, 2017.[13]

### B. Claims

Henige brought five claims: alleged violations of his First Amendment rights, alleged violations of his Fourteenth Amendment due process rights, alleged sex discrimination under Title VII of the Civil Rights Ace, alleged disability discrimination under the Americans with Disabilities Act (ADA), and a state law claim alleging tortious interference of business relations. A fuller explanation of Henige's relevant allegations against each of the Defendants is contained within the sections below, organized by the laws under which he

---

[7] Dkt. 1:6 at ¶ 15.
[8] Dkt. 1:6 at ¶ 18.
[9] Beginning on page seven of the Complaint, the paragraph numbering stops at 23 and restarts at 16. For clarity, this brief will cite to page numbers and paragraph numbers. (Dkt.1:7.)
[10] Dkt. 1:7 at ¶ 20.
[11] Dkt. 1:6 at ¶ 16.
[12] Dkt. 1:7 at ¶ 21.
[13] Dkt. 1:20-21 at ¶¶ 67-68.

seeks relief. However, given the number of Defendants and laws invoked by the Plaintiff's Complaint, the following table is provided to illustrate Henige's claims and their relevant parties:

**Table 1: Outline of Henige's Claims**

| Claim | Law(s) invoked by claim, as pled in Complaint | Defendant(s) named in claim |
|---|---|---|
| First Amendment Retaliation | The First Amendment via 42 U.S.C. § 1983.[14] | All Defendants named in Henige's Complaint. All individuals sued in their personal and official capacities.[15] |
| Due Process Violations | Fifth and Fourteenth Amendments via 42 U.S.C. § 1983.[16] | Board, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Bradbury, Cook, Mertens, Kuhl, and Kopper. All individuals sued in their personal and official capacities.[17] |
| Sex Discrimination | Title VII of the Civil Rights Act of 1964 (Title VII).[18] | Board, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Perterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, |

---

[14] Dkt. 1:27.
[15] Dkt. 1:1-2; dkt. 1:27 at ¶ 90.
[16] Dkt. 1:27.
[17] Dkt. 1:1-2; dkt. 1:28 at ¶¶ 94-95.
[18] Dkt. 1:25 at ¶ 80.

| | | Gulig, Leitheiser, Weston, Telfer, Kopper, Messer, Melton. All individuals sued in their personal and official capacities.[19] |
|---|---|---|
| Discrimination Based on Disability | The Americans with Disabilities Act (ADA).[20] | Board, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Elrod, Mertens. All individuals sued in their personal and official capacities.[21] |
| Tortious Interference of Business Relations | 28 U.S.C. § 1367. [22] | Board, Lathrop, Telfer, Kopper, Elrod, Mertens, Messer, Melton. All individuals sued in their personal and official capacities.[23] |

## ARGUMENT

## I.  Legal Standard for a Motion to Dismiss.

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss tests the sufficiency of the complaint; it does not determine the merits of the lawsuit. *See Triad Assocs., Inc. v. Chi. Hous. Auth.,* 892 F.2d

---

[19] Dkt. 1:1-2; dkt. 1:28-29 at ¶ 99.
[20] Dkt. 1:26 at ¶ 84.
[21] Dkt. 1:1-2; dkt. 1:29-30 at ¶¶ 104-105.
[22] Dkt. 1:30-31 at ¶¶ 110-11.
[23] Dkt. 1:1-2; dkt. 1:30-31 at ¶¶ 110-11.

583, 586 (7th Cir. 1989). To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).

Deciding a motion to dismiss, courts must accept the factual allegations as true, *see id*. at 572, in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). However, a complaint cannot simply contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must include specific allegations that, if true, make the plaintiff's claim for relief more than speculative. *See Twombly*, 550 U.S. at 555. In order "[t]o meet this plausibility standard, the complaint must supply enough fact to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 934-35 (7th Cir. 2012).

## II. The Board of Regents is not a person for purposes of any claims brought under 42 U.S.C. § 1983.

6

Henige brings multiple claims against the Board via 42 U.S.C. § 1983.[24],[25] These claims must be dismissed because the Board is not a "person" under this federal statute. It is black letter law that a state, state agency, or an arm of the state is not a person under Section 1983 and an entity is not subject to such a claim. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Gleason v. Bd. of Educ. of City of Chicago*, 792 F.2d 76, 79 (7th Cir. 1986). The Board is not a person, but rather an agency or arm of the State of Wisconsin. Therefore, Henige's claims under 42 U.S.C. § 1983 against the Board must be dismissed.

## III. The Eleventh Amendment bars Henige's claims against the defendants in their official capacities brought via 42 U.S.C. § 1983 and the Americans with Disabilities Act, and the *Ex Parte Young* exception does not apply.

An official capacity suit against a state official is not a suit against the official but rather is a suit against the official's office, and "is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. at 71. Thus, the Eleventh Amendment bars actions in federal court against

---

[24] 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[25] Dkt. 1:27-28 at ¶¶ 89-97.

state officials sued in their official capacities. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Will,* 491 U.S. at 70-71; *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir. 1993) (state officials sued in their official capacities cannot be sued for money damages).

There are three specific exceptions to Eleventh Amendment immunity to lawsuits in federal court: (1) Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of its power; (2) a state has properly waived its immunity and consented to suit in federal court; and (3) the plaintiff "seek[s] prospective equitable relief for ongoing violations of federal law … under the *Ex Parte Young* doctrine." *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002) (citing *Marie O. v. Edgar*, 131 F.3d 610, 614-15 (7th Cir. 1997) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56 (1996) and *Ex Parte Young*, 209 U.S. 123, 159-60 (1908))). Here, the first two exceptions do not apply to Henige's claims under section 1983 or his claim under the Americans with Disabilities Act (ADA) because Congress has not abrogated the State's immunity from suit

under either statute,[26],[27] and Wisconsin has not waived its immunity and consented to suit.

As for the third exception, State employees may be sued in their official capacities in federal court, but *only* for prospective relief to end ongoing violations of federal constitutional law or statutory provisions. *Ex Parte Young*, 209 U.S. 123, 156-57 (1908). To avoid the Eleventh Amendment bar, a plaintiff must allege that the state officer is currently acting in violation of federal law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

The complaint must seek prospective relief to address this ongoing violation, not compensation or other retrospective relief for violations past. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Quern v. Jordan*, 440 U.S. 332, 346-49 (1979). As the Seventh Circuit has explained, "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges [1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective.'" *Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) (citing *Verizon Maryland Inc. v. Public Service Commission of Maryland,* 535 U.S. 635, 645 (2002)); *MCI*

---

[26] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67, 71 (1989); *Gleason v. Bd. of Educ. of City of Chicago*, 792 F.2d 76, 79 (7th Cir. 1986).

[27] *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001).

*Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 336-37 (7th Cir. 2000). When the plaintiff does not allege an "ongoing violation of federal law," a federal court may not issue equitable relief. *Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986).

Here, the only relief Henige seeks is monetary relief for alleged past violations.[28] Henige's Complaint alleges no ongoing violation of federal law, which is required in order to avoid Eleventh Amendment immunity. *Peirick v. Indiana Univ.-Purtue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). Nor does Henige asked for reinstatement anywhere in his Complaint. Because Henige no longer works for UW-W, he does not face any ongoing alleged violations, nor is he at imminent risk of future alleged violations of the law by the Defendants.

Henige has not alleged any ongoing violation of federal law, he does not seek injunctive relief, nor could he obtain injunctive relief. For the reasons outlined above, Henige's ADA and section 1983 claims against the Defendants in their official capacities must be dismissed.

## IV.    Henige's Title VII and Section 1983 sex discrimination claims must be dismissed.

### A. Applicable Legal Principles.

---

[28] Dkt. 1:27-30 at ¶¶ 91-92, 96-97 106-107,

Title VII of the Civil Rights Act of 1964 (Title VII) prohibits an employer[29] from discriminating against an individual because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To state a Title VII claim, Henige must prove that his gender motivated, at least in part, the decisions to discipline and terminate him. Henige also alleges he was subject to harassment because of sex.[30] To survive a motion to dismiss his sex harassment claim, Henige must allege facts that, if proven true, demonstrate he suffered a hostile work environment because of sex.

Henige cannot sue individual defendants under Title VII. All Title VII claims against individuals should be summarily dismissed. Henige could only bring Fourteenth Amendment equal protection sex discrimination and harassment claims against individuals under 42 U.S.C. § 1983.[31] The Equal Protection Clause of the Fourteenth Amendment forbids a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Put simply, the Clause directs that "all persons similarly

---

[29] Under Title VII, there is no individual liability against an employer's agents, only an entity employing more than 15 people can be sued under this statute. *Williams v. Banning,* 72 F.3d 552, 554 (7th Cir. 1995) (citations omitted). Thus, the Board of Regents is the only proper defendant under Title VII.

[30] Dkt. 1:28-29 at ¶¶ 99-100.

[31] Although Henige did not plead a sex discrimination claim under the Equal Protection Clause of the Fourteenth Amendment, the Defendants analyze Henige's under both Title VII and the Equal Protection to show that any amendment of Henige's Complaint to add an Equal Protection claim would be futile.

situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living* Ctr., 473 U.S. 432, 439 (1985). Because many cases involve two or more intertwining claims, employment discrimination cases brought under Title VII and Section 1983 share not only the same standard of proof, but the same case law. *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010); *Williams v. Seniff*, 342 F.3d 774, 787–88 (7th Cir. 2003).

A claim alleging violation of the Equal Protection Clause requires a plaintiff show he or she was the victim of "intentional discrimination." *Radentz v. Marion Cnty.*, 640 F.3d 754, 756 (7th Cir. 2011); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted). The Equal Protection Clause "does not prohibit all negative employment actions against [a member of a protected class]," and courts recognize that where, "as a purely personal matter, a boss and a particular employee are not compatible," it is not discrimination based on sex to take action against the employee based on a reason other than sex. *King v. Bd. of Regents of Univ. of Wis. Sys.*, 898 F.2d 533, 539 (7th Cir. 1990).

Like Title VII cases against employers, Section 1983 cases against individuals alleging employment discrimination require the unequal treatment be in the form of an "adverse employment action" that causes "a qualitative change in the terms or conditions of [the employee's] conditions of employment or some sort of real harm." *Stone v. Bd. of Tr. of N. Ill. Univ.*, 38 F. Supp. 3d 935, 944 (N.D. Ill. 2014) (alteration in original) (citation and quotation marks omitted).

Henige's Complaint asserts he was subject to sex discrimination and harassment because four colleagues filed a total of 19 internal sex discrimination complaints *against him* over a several-year period and his employer (the Board), and individual Defendants investigated and ultimately dismissed the complaints.[32] From these facts, the Complaint concludes his employer "took no action to put a stop to said allegations, and thus permitted the creation of an ongoing hostile work environment for all males in the Department."[33] Henige also alleges he was dismissed, in part, because *he* "denigrated female colleagues."[34] Henige's Complaint contains no other allegations related to sex discrimination or harassment.

Henige's Title VII and Section 1983 discrimination and harassment claims must be dismissed because his Complaint does not contain facts that

---

[32] Dkt. 1:24 at ¶¶ 75-77.
[33] Dkt. 1:24 at ¶ 77.
[34] Dkt. 1:25 at ¶ 79.

"raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Indep. Trust Corp.*, 665 F.3d at 934-35.

### B. Henige has not pled any facts capable of suggesting that he, as a man, was subject to unequal treatment, based on his sex.

As with most employment discrimination claims, a plaintiff proceeding under Title VII or Section 1983 may prove intentional discrimination using the direct or indirect method of proof. *See, e.g., Harper v. Fulton Cnty., Ill.*, 748 F.3d 761, 765 (7th Cir. 2014). Whether proceeding under the direct or indirect method of proof, equal protection claims often largely rely on comparative evidence that members of a protected class were treated less favorably than "similarly-situated" people not part of that class. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013).[35]

Typically, using the indirect method of proof, a *prima facie* case of discrimination under Title VII or Section 1983 requires a plaintiff demonstrate (1) he is a member of a protected class, (2) he met his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside of the protected class were treated more favorably.

---

[35]*Ortiz v. Werner Enterprises, Inc.*, eliminated any distinction between direct and indirect evidence but preserved the *McDonnell Douglas* burden shifting framework. 834 F.3d 760, 765-66 (7th Cir. 2016).

*Arizanovska,* 682 F.3d at 702; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Henige is a male alleging gender discrimination. In circumstances of reverse-discrimination[36] such as this one, the first prong of the *McDonnell-Douglas* test requires a plaintiff show "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against [males or] whites or evidence that there is something "fishy" about the facts at hand." *Henry v. Jones,* 507 F.3d 558, 564 (7th Cir. 2007) (internal quotations omitted) (citing *Phelan v. City of Chic.*, 347 F.3d 679, 684 (7th Cir. 1999) (quoting *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999) (internal citation omitted)); *see also Farr v. St. Francis Hosp. and Health Centers, 5*70 F.3d 829, 833 (7th Cir. 2009). While Title VII prohibits discrimination against anyone, including Caucasians and males, the modified approach to the first *McDonnell-Douglas* prong is "justified because the presumption that arises once the *McDonnell Douglas* prima facie test is met—that unless otherwise explained, discrimination is more likely than not the reason for the challenged decision—is not necessarily justified when the plaintiff is a member of a historically favored group." *Mills*, 171 F.3d at 455 (quotation and citation omitted). Here, Henige did not plead any facts

---

[36] Reverse-discrimination refers to allegations of discrimination brought by Caucasians or men. *Hosick v. Chic. State Univ. Bd. of Trs.*, 924 F.Supp.2d 956, 966 (N.D. Ill. 2013).

to suggest he, as a male, was subject to any sort of unequal treatment, discrimination, or harassment because of his sex. Nor did he plead facts suggesting UW-W "has reason or inclination to discriminate invidiously against" men. *Henry,* 507 F.3d at 564. This claim must be dismissed.

### C. Henige has not pled facts capable of showing that he was subjected to harassment or a hostile working environment, based on his sex.

Harassment based on sex is actionable under Title VII against employers and under Section 1983 against individuals. These claims require proof that the plaintiff was subject to a materially hostile work environment because of sex. To establish this claim, "(1) the plaintiff must be the object of unwelcome harassment; (2) the harassment must be because of sex, (3) it must be sufficiently severe and pervasive so as to alter the conditions of employment; and (4) there must be a basis for employer liability." *Bellino v. Peters*, 530 F.3d 543, 551 (7th Cir. 2008). "A hostile work environment exists where an employee experiences harassment that is 'so severe or pervasive as to alter the conditions of employment and create an abusive working environment.'" *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

Whether conduct meets this bar depends on "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with

an employee's work performance." *Johnson v. Advocate Health and Hosp. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018). Courts look "for evidence that the workplace was both subjectively and objectively offensive." *Id.* "We expect a certain level of maturity and thick skin from employees." *Id.* "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook Cnty.*, 689 F.3d 655, 667 (7th Cir. 2012). "[D]iscrimination laws do not mandate admirable behavior from employers, through their supervisors or other employees. Instead, the law forbids an employer from creating an actionably hostile work environment for members of protected classes." *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001).

Sexual harassment that is so "severe or pervasive as to alter the conditions of the victim's employment and creates an abusive working environment violates Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). Put simply, only a "hellish" workplace is actionable as a hostile work environment. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). "In other words, the environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). The Supreme Court "has never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or

connotations." *Oncale*, 523 U.S. at 75, 81 (1998). *See also Rizzo v. Sheahan*, 266 F.3d 705 (7th Cir. 2001); *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir. 1996) (noting that a prime facie case of sexual harassment requires a showing that "but for the plaintiff's sex, he or she would not have been the subject of harassment"). Severity and pervasiveness have an inverse relationship: the more frequent or pervasive the conduct, the lower the required level of severity. *Id.* (citing *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991)).

In considering whether alleged sexual harassing conduct actually altered the conditions of a plaintiff's employment, the court must evaluate whether the conduct is severe or pervasive enough that a reasonable person would find it hostile or abusive and consider whether the plaintiff subjectively perceived the environment to be abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993); emphasis added. "The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Cooke v. Stefani Mgmt. Servs.*, 250 F.3d 564, 566–67 (7th Cir. 2001).

Courts looks at a continuum of behaviors in evaluating whether the conduct alleged was objectively severe enough to alter the terms of a plaintiff's employment. Relatively isolated incidents of sexual misconduct are often

deemed insufficient to constitute a hostile environment. *See, e.g. Wenner v. C.G. Bretting Mfg. Co.*, 917 F. Supp. 640, 647 (W.D. Wis. 1995); *Rennie v. Dalton,* 3 F.3d 1100, 1106-07 (7th Cir. 1993).

Indeed, the Seventh Circuit has refused to find a hostile work environment in a case with far more serious behavior than Plaintiff has alleged. For example, as discussed in *Baker*, in *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004), the court of appeals found no sexual harassment "despite evidence that plaintiff's supervisor would ask female employees what color bras they were wearing, ask plaintiff suggestively whether he could make a house call when she called in sick, show her outfits in Victoria's Secret catalogues and suggest that they would look good on her and even pull back her tank top to see her bra."

Finally, "[b]efore liability for sexual harassment can arise, the employee must give the employer enough information to make a reasonable employer think that there was some probability that she was being sexually harassed." *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 606 (7th Cir. 2006) ((citation and quotation marks omitted). General allegations of discrimination and harassment do not meet this standard, and vague comments detailing a co-worker's unprofessional behavior are likewise not enough to prove employer liability. *Jajeh v. Cnty. Of Cook*, 678 F.3d 560, 569 (7th Cir. 2012).

Henige's vague accusation that it was a "hostile work environment for all males in the Department of Art and Design" by permitting other staff and professors to file complaints of sex discrimination and investigating those complaints,[37] is insufficient as a matter of law. While Henige alleges the complaints themselves were dismissed, he does not allege that the complaints were frivolous, or that the complaints were filed against Henige because of *his* sex. He only alleges that others asserted Henige was discriminatory toward them. And while 19 different complaints against one person may qualify as "pervasive" there are no facts in the complaint to suggest they were "severe," insofar as the complaints themselves constituting harassing or invidious hostility toward men. The law requires much more to state a claim of harassment or a hostile work environment based on sex. Therefore, the sex discrimination claims under Title VII and Section 1983 must be dismissed.

## V.    Henige's Due Process claim must be dismissed.

### A. Applicable Legal Principles.

The Fourteenth Amendment prohibits states from depriving persons of liberty or property without due process of law. U.S. Const. amend. XIV, § 1. Procedural due process claims first ask "whether there exists a liberty or property interest which has been interfered with by the State." If so, the court

---

[37] Dkt. 1:25 at ¶ 77.

"examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Constitutional due process requires notice and an opportunity to be heard prior to state action. *Simpson v. Brown Cty.*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). While a state may provide more extensive pre-deprivation administrative remedies, failure to adhere to them will not offend the constitution. *Id.*; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.") (citation omitted).

Courts analyzing due process claims, particularly in the employment context, look to the "adequacy of pretermination procedures" in light of "the extent of post-termination procedures" provided by state law. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). "Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards" due. *Id.* (quoting *Swank v. Smart*, 898 F.2d 1247, 1256 (7th Cir. 1990)). And while employees have "an independent

right to a pretermination proceeding…, when adequate post-termination proceedings exist, a pretermination hearing need only provide 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Id.* at 536 (quoting *Cleveland Bd. of Edcu. v. Loudermill,* 470 U.S. 532, 542 (1985). In *Michalowicz*, a public employee asserted violation of his due process rights because he was terminated by an allegedly biased hearing panel. 528 F.3d at 535–36. The hearing panel's decision was subject to judicial review. Holding that a state law post-deprivation remedy should not be found to violate the United States Constitution unless it is "inadequate to the point that it is meaningless or nonexistent," the court determined the plaintiff could not state a due process claim and upheld the District Court's order under Fed. R. Civ. P 12(b)(6). *Id.* at 534-35, 538. (citation omitted).

As addressed below, Henige alleged facts to demonstrate he received constitutionally adequate pre-deprivation procedures, and Wisconsin's administrative procedure act, Wis. Stat. ch. 227, affords constitutionally adequate post-deprivation procedures. *See* Wis. Stat. § 227.57 (allowing a court to set aside or modify, or remand a state administrative decision if the agency's decision "has been impaired by a material error in procedure or a failure to follow prescribed procedure," if the agency misinterpreted the law, if its

decision is not supported by the evidence, or if it abused its discretion). Thus, the mere availability of state procedures, whether utilized or not, makes federal judicial intervention inappropriate. *See, e.g., Leavell v. Ill. Dep't of Nat. Res.,* 600 F.3d 798, 805 (7th Cir. 2010) (holding failure to avail oneself of available post-deprivation procedures does not equate to a constitutional denial of procedure.).

**B. The State provided Henige with Due Process.**

Henige's claim against the individual Defendants cannot survive a motion to dismiss because his employer provided him with Constitutionally adequate pre-deprivation procedures. "In its truncated form, 'pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story.'" *Michalowicz*, 528 F.3d at 537 (quoting *Gilbert v. Homar,* 520 U.S. 924, 929 (1997)).

Defendants agree Plaintiff has met shown that he had a property interest in his employment. As a tenured professor, state law mandates that Henige could only be dismissed for cause, and thus he established a properly interest in his job.

As for the second prong, the State provided pre-deprivation process that satisfied the Constitution. Henige alleges he was provided notice and a pre-

termination hearing.[38],[39]   These allegations conclusively establish the defendants provided the minimum constitutional pre-deprivation process. This is all constitutional due process requires.

Because the Complaint conclusively established Henige was provided "complaints" and "charges," and had hearings through hearing panels that included cross examination and presentation of witnesses[40], and because the State of Wisconsin has adequate post-deprivation procedures aimed to address alleged pre-deprivation due process violations, this due process claim must be dismissed. Wisconsin's administrative procedure act, Wis. Stat. ch. 227, affords constitutionally adequate post-deprivation procedures. *See* Wis. Stat. § 227.57. "The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003). Here, Henige filed a petition for judicial review of the administrative decision to terminate his employment, but he did not comply with the statutory requirements of Wis. Stat. § 227.53(1)(a)1 and the court dismissed his complaint.[41]   Although "a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this

---

[38] *See* dkt. 1:14 and 1:20 at ¶¶ 51, 53, 63, 67.

[39] Plaintiff did not attach a copy of the October 27, 2017 hearing panel recommendation or the February 12, 2018 decision to terminate his employment. Attached hereto as Exhibits 1001 and 1002, respectively, are true and correct copies of those documents.

[40] *See* dkt. 1:15

[41] *See* ex. 1003 at pp. 1-2.

does not change the fact that no due process violation has occurred when adequate state remedies exist." *Id*. In the present case, in addition to the administrative hearing, the State of Wisconsin made available extensive post-deprivation remedies; Henige simply did not avail himself of them.

Henige's Complaint largely asserts the university did not follow its own procedures, which does not amount to a constitutional violation. *See, e.g., Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago,* 741 F.3d 769, 773 (7th Cir. 2013) (collecting cases) (holding a plaintiff does not have a constitutional due process claim based on a school's failure to follow its own procedures). Because Henige was given notice and an opportunity to respond, because the State afforded him post-deprivation process, and because the Constitution does not require a state to follow its own procedures, his claim must be dismissed with prejudice.

## VI. Henige's First Amendment retaliation claim must be dismissed.

### A. Applicable Legal Principles.

While public employees retain rights to protected speech under the First Amendment, a three-step analysis is required to determine whether the employee's speech is constitutionally protected. *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 970 (7th. Cir. 2001.) First, the court must determine whether the employee's speech was constitutionally protected under the *Connick-Pickering* test. *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir.

2006.) Then the Court must determine if the speech was a substantial or motivating factor in the alleged retaliatory action. *Id*. Then, if the Court determines that a party has satisfied the first two steps of the analysis, the Defendants then have the opportunity to establish that they would have taken the same action in the absence of the employee's protected speech. *See id*.

The first step of the *Connick-Pickering* test, a two-part analysis to determine whether an employee's speech was constitutionally protected, is to determine whether the employee's speech addressed a matter of public concern. *Wozniak v. Adesida*, 368 F.Supp.3d 1217, 1233 (C.D. Ill. 2018) (citing *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th. Cir. 2004)). The "threshold inquiry" in this step is to determine "whether the public employee spoke as a private citizen, or instead spoke in his capacity as an employee." *Wozniak v. Adesida*, 368 F.Supp.3d 1217, 1233 (C.D. Ill. 2018) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418-421 (2006)). Only if an employee spoke as a private citizen will the court then review the "content, form, and context" to determine if the speech addressed a matter of public concern. *See id*.

## B. Henige does not state a First Amendment Retaliation claim against the Defendants.

Henige alleges that his employment was terminated in retaliation for exercising his first amendment rights.[42] Specifically, Henige alleges that he

---

[42] Dkt. 1:8-13, 27 at ¶¶ 22-47, 90.

engaged in constitutionally protected free speech through the following conduct:

- When he "made numerous public statements critical of UWW administrators and administrative actions . . . [between] August 2011 and February 12, 2018.[43]

- When he "conveyed to administrators concerns reported to him by students that they were being delayed in their graduation by a lack of available required courses" between August 2011 and February 12, 2018.[44]

- When he "conveyed to administrators concerns reported to him by Bachelor of Fine Arts students that they were being delayed in the graduation by circumstances within the control of the faculty[,]" including "raising that time-to-degree and credits-to-degree for the Bachelor of Fine Arts programs were much higher than the University promises."[45]

- When he "conveyed to administrators concerns that he had that the art history major did not meet the standards published by the

---

[43] Dkt. 1:8 at ¶ 23.
[44] Dkt. 1:8 at ¶ 24
[45] Dkt. 1:9 at ¶ 26.

accrediting body for that program, the National Association of Schools of Art and Design…."[46]

- When he "conveyed to administrators concerns reported to him by student that important reviews of student progress were not being conducted in the same manner as published in the Undergraduate Catalog…."[47]

- When he "expressed numerous concerns regarding a junior colleague in art history…concerns relating to her performance relative to the Department's service to its students."[48]

- When he "expressed concerns regarding academic staff member Michael Flanagan and actions he took while serving in the capacity of interim department chair…."[49]

- When he "conveyed to administrators, colleagues, and the Chair of the Faculty Senate about [sic] concerns he had about the failures of administrators and faculty to comply with the requirements published din the Faculty Personnel Rules."[50]

---

[46] Dkt. 1:9 at ¶ 29.
[47] Dkt. 1:10 at ¶ 32.
[48] Dkt. 1:10 at ¶ 33.
[49] Dkt. 1:11 at ¶ 35.
[50] Dkt. 1:11. at ¶ 37.

- When he "submitted[51] several opinion pieces to the school newspaper, *The Royal Purple*, about the failures of administrators and faculty to comply with the requirements published in the Faculty Personnel Rules and criticizing changes to those rules…."[52]

- When he "conveyed to administrators and colleagues concerns he had that administrators were advising faculty that records relating to past disciplinary matters were private and 'unknowable.'"[53]

- When he "disclosed to the faculty that they were in violation of Open Meetings Law because they attended meetings from which [he] had been unlawfully excluded under threat of disciplinary action."[54]

Henige alleges that the "termination of his position as tenured associate professor is reflective of the animus Defendants possess" for his constitutionally protected speech.[55] But, a review of Henige's job duties, as

---

[51] Henige's word choice of "submitted" in reference to opinion pieces for the school newspaper bears importance. In his complaint, Henige neither alleges nor attaches proof that any of his opinion pieces were published in the student newspaper. If, indeed, none of Henige's opinion pieces were published in the student newspaper, Henige has alleged no factual basis upon which the Court can reasonably infer that any of the Defendants were aware of the issues raised in Henige's unpublished opinion pieces.

[52] Dkt. 1:11 at ¶ 38.

[53] Dkt. 1:12 at ¶ 39.

[54] Dkt. 1:12 at ¶ 41.

[55] Dkt. 1:13 at ¶¶ 46-47.

alleged by him in his Complaint, shows that Henige spoke about each of these issues in his capacity as an employee, not as a private citizen addressing a matter of public concern.

Henige's Complaint fails the threshold inquiry of the *Connick-Pickering* test, because the speech alleged to form the basis of his First Amendment retaliation claim was all made in the context of his employment position. Thus, Henige's speech was not protected. *See id.* While employed by UW-W from 2001 to 2018, Henige served as a professor, taught courses, and served on multiple committees, including the Faculty Senate.[56] While serving as the Department's Assistant Chair between July of 2007 and June of 2008, Henige "coordinated the Department's efforts to gain accreditation of its programs from the National Association of Schools of Art and Design (NASAD), and authored the self-study which ultimately resulted in accreditation."[57] As Chair of the Department between July 2008 and June 2011, "he was responsible for the day-to day operations of the Department, for scheduling courses, for advising students, for managing budgets and personnel, [and] for maintaining accreditation data, among other duties."[58] These duties, as outlined by Henige himself, clearly show the speech he now seeks to categorize as constitutionally

---

[56] Dkt. 1:7-8 at ¶¶ 16-21.
[57] Dkt. 1:7 at ¶ 17.
[58] Dkt. 1:7 at ¶ 18.

protected speech and concerning the public interest, was made squarely within the course of his employment.

Each of Henige's concerns, such as concerns about accreditation, student success, his colleagues' work performance, and the Department's compliance with accreditation standards and UWW guidelines were well within Henige's roles as the Department as Chair, Assistant Chair, and a tenured faculty member. The First Amendment does not protect speech concerning personal employment grievances. *Id.* at 421 ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.") This is the case regardless of the content of the speech. *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007). "[A] public employee's speech motivated solely by private interests is not protected speech, even if the speech is relevant to a public issue." *Hagan v. Quinn*, 84 F. Supp. 3d 826, 830 (C.D. Ill. 2015), aff'd on other grounds, 867 F.3d 816 (7th Cir. 2017) (citations omitted). "If the only point of the speech was to further some purely private interest or addresses only the personal effect upon the employee, then the speech is not of public concern for First Amendment purposes." *Id.* (citations and quotations omitted).

Because Henige's speech amounts to no more than his personal dissatisfaction with the actions of his former administrators and colleagues

and how those actions affected him in his official employment responsibilities, it is not protected under the First Amendment and this claim must be dismissed.

## VII.    Henige's ADA claims must be dismissed.

Henige brings two claims under the ADA: (1) the Defendants failed to accommodate him[59] and (2) they terminated his employment based, in part, on an alleged disability.[60] This is an employment claim and therefore it is brought under Title I.

First, Henige's claims brought under the ADA must be dismissed against the Defendants in their individual capacities. Employees of the State are not amenable to suit under the ADA. *See* 42 U.S.C. § 12131; *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012); *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Because the individual defendants cannot be sued in their individual capacities under the ADA, they should be dismissed from the suit with prejudice.

Henige's ADA claim against the Board and the Defendants in their official capacities must also be dismissed based on sovereign immunity and on the merits. As indicated in Section III the state and its employees sued in their

---

[59] Dkt. 1:25 at ¶ 82.
[60] Dkt. 1:25-26 at ¶¶ 82-83.

official capacities have sovereign immunity from suit under the Eleventh Amendment. *Garrett*, 531 U.S. at 372-73.

### A. Henige's Complaint does not establish facts to show that he was a qualified individual with disability, entitled to the protections of the ADA.

Henige has not pled sufficient facts to establish a *prima facie* case of disability discrimination. To establish a *prima facie* case of disability discrimination under the ADA, Henige has to show the following: "(1) he is disabled; (2) he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016) (citing *Arroyo v. Volvo Grp. N. Am., LLC,* 805 F. 3d 278, 286-87 (7th Circ. 2015)).

The ADA defines a "disability" as a "a physical or mental impairment that substantially limits one or more major life activities of such individual" ; "a record of such an impairment" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A-C). A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Henige has not alleged he had a disability or that he could perform his position, with or without reasonable accommodation. Thus, Henige has provided insufficient detail to establish that he is a person with a disability,

much less a "qualified individual with a disability."[61] As such, Henige cannot meet the elements of a prima facie case of disability discrimination and this claim must be dismissed.

### B. Henige cannot show that the Board failed to accommodate him under the ADA.

Henige has not pled sufficient facts to show he can satisfy the three elements required to show a failure to accommodate claim under the ADA: (1) he is a qualified individual with a disability; (2) the defendants were aware of his disability; and (3) the defendants failed to reasonably accommodate his disability. *See Brumfield*, 735 F.3d at 631; *Gratzl v. Office of Chief Judges of 12th, 18th 19th and 22nd Judicial Circuits*, 601 F.3d 674, 681 (7th Cir. 2010). As discussed in section VII A, *supra*, based on the facts alleged in his Complaint, Henige did not plead any facts indicating he is a qualified individual with a disability subject to the protections of the ADA. Further, by Henige's own admission, he *was* accommodated.[62] Thus, Henige has pled himself out of court on his failure to accommodate claim and this claim must be dismissed.

### VIII. The Court must dismiss Henige's state law claim of tortious interference of business relations because he did not file a timely notice of claim.

---

[61] *See* dkt. 1:25-26 101 ¶¶ 81-84.
[62] Dkt. 1:25 at ¶ 82.

Henige alleges that the Defendants "tortuously interfered with his future business opportunities by retaliating against him and punishing him for his constitutionally protected conduct."[63] The Court must dismiss Henige's state law tortious interference of business relations claim because Henige did not file a timely notice of claim. (*See* Clark Decl. ¶4, ex. 1004.) Under Wis. Stat. § 893.82, a plaintiff must file a notice of claim with the Wisconsin Attorney General in order to commence an action against a state officer, employee, or agent. Wis. Stat. § 893.82(3) specifies that a notice of claim must be filed "within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding…." In this case, Henige's employment was terminated on February 12, 2018, but he did not mail his notice of claim until June 25, 2018. (Clark Decl. ¶ 4.) This means that Henige did not serve his notice of claim until 133 days after the event giving rise to his civil action or civil proceeding, and his claim is untimely under Wis. Stat. § 893.82(3).

A claimant must "compl[y] strictly with the requirements" of Wis. Stat. § 893.82 to bring an action against a state officer, employee or agent. Wis. Stat. § 893.82(2m). The requirements of the statute must be "adhered to with exact care." *Newkirk v. Wis. Dep't of Transp.*, 228 Wis. 2d 830, 833, 598 N.W.2d 610

---

[63] Dkt. 1:30-31 at ¶¶ 110-11.

(Ct. App. 1999). Substantial compliance is insufficient to meet the terms of the statute. *Kellner v. Christian*, 197 Wis. 2d 183, 195, 539 N.W.2d 685 (1995).

Failure to comply with the requirements of Wis. Stat. § 893.82 is fatal to any claim because its requirements are jurisdictional. *Riccitelli v. Broekhuizen*, 227 Wis. 2d 100, 116, 595 N.W.2d 392 (1999). "Section 893.82 is not merely a procedural statute that may be waived by the state or its employee[s]. Compliance with sec. 893.82 is necessary to warrant recovery against a state employee." *Tierney v. Lacenski*, 114 Wis. 2d 298, 304 (Wis. Ct. App. 1983) (citing *Mannino v. Davenport*, 99 Wis. 2d 602, 612 (Wis. 1981).[64] Thus, "its requirements cannot be waived[.]" *Oney*, 197 Wis. 2d at 904.

Because Henige failed to comply with the statutory requirement to serve the Wisconsin Attorney General with a notice of claim within 120 days of his termination, the action giving rise to this lawsuit, his state law claim of tortious interference of business relations is barred and the Court must dismiss this claim.

IX. **Even if Henige's claims did not fail on their merits, the individual Defendants are entitled to qualified immunity because there was no clearly established law prohibiting filing and investigating harassment complaints against Henige, nor the Olson Panel and Board from making their decisions.**

---

[64] *See, also, Oney v. Schrauth*, 197 Wis. 2d 891, 904-05 (Wis. Ct. App. 1995) ("Section 893.82(3), Stats., is a jurisdictional statute and must be strictly complied with before a trial court obtains jurisdiction."); *Ibrahim v. Samore*, 118 Wis. 2d 720, 726 (Wis. 1984) (same); *J.F. Ahern Co. v. Wisconsin State Bldg. Comm'n*, 114 Wis. 2d 69, 83 (Wis. Ct. App. 1983) (same); *Brown v. State of Wisconsin*, No. 16-CV-346-BBC, 2017 WL 371915, at *14 (W.D. Wis. Jan. 25, 2017) (same).

36

Even if the Court declines to grant dismissal on the basis of the facts as presented in the Complaint, the individual Defendants are entitled to qualified immunity.

Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. *Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir. 2010). To be clearly established, a right must be sufficiently clear "that *every* reasonable official would have understood that what he is doing violates that right. *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012) (internal quotations and brackets omitted) (emphasis added). This is an extremely high bar. *Kramer v. Pollard*, 497 F. App'x 639, 642 (7th Cir. 2012). To defeat a qualified-immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (emphasis added). Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Qualified immunity may be available to a defendant "even if the existence of disputed issues of fact precludes a grant of summary judgment on the merits." *Green v. Carlson*, 826 F.2d 647, 652 n.4 (7th Cir. 1987). Evidence concerning a defendant's subjective intent is "simply irrelevant." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Thus, except in extraordinary circumstances, a public official's actual knowledge is irrelevant to the determination of whether there is immunity from suit. *McKinley v. Trattles*, 732 F.2d 1320, 1324 (7th Cir. 1984). An allegation of malice does not defeat immunity if the defendant acted in an objectively reasonable manner. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Similarly, acting out of spite is irrelevant if the conduct is objectively lawful. *Anderson v. Romero*, 72 F.3d 518, 521 (7th Cir. 1995).

While the Supreme Court's case law "do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (internal quotations omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

In *White*, the Supreme Court reversed lower court decisions on qualified immunity for a police officer's alleged use of excessive force. The Court emphasized that under the clearly established analysis, it is still necessary to

38

identify a case where an officer acting under similar circumstances was held to have violated the Constitutional right. *See White*, 137 S. Ct. at 553. The Court concluded that the cases the Tenth Circuit relied on were insufficient to clearly establish the right because they laid out "excessive-force principles at only a general level." *Id*. The Court also noted that when a case presents a unique set of facts and circumstances, that alone should be an indication that the conduct did not violate a clearly established right. *Id*.

The Seventh Circuit recently decided a case which focused on the extent to which a right must be clearly established. *Leiser v. Kloth*, 933 F3d 696 (7th Cir. 2019). The right must be clearly established to a degree of specificity that a government official would be able to identify the constitutional violation with a specific set of facts. *Id*. at 702. In *Leiser*, the plaintiff claimed a correctional officer intentionally inflicted psychological harm upon him when she refused to modify her correctional duties based on his self-report that standing behind him exacerbated his post-traumatic stress disorder. No medical or psychological staff had made such a diagnosis, nor issued restrictions to accommodate this alleged reaction to an officer positioned behind him. *Id*. at 699.

The district court determined that Leiser had the right to be free from intentionally inflicted psychological harm and denied qualified immunity. The Seventh Circuit reversed, finding the general right to be free from such harm lacked sufficient specificity. The appellate issue was whether it was clearly

established that the defendants were constitutionally required to accommodate the plaintiff's unique mental health needs based solely on the inmate's self-reporting, as supported by the demands of other inmates. *Id.* at 703. Existing Seventh Circuit precedent establishes that not every psychological discomfort experienced by an inmate amounts to a constitutional violation. *Id.* (citing *Calhoun v. Detella*, 319 F.3d 936 939 (7th Cir. 2003)). The specific facts of the case and existing precedent provided the correctional officer who stood behind the plaintiff with qualified immunity. *Leiser*, 933 F.3d at 704.

Further, in a recent decision of the United States Supreme Court, the Court reaffirmed entitlement to qualified immunity, not allowing general statements of the law to satisfy the Plaintiff's burden to identify a case that demonstrates the law is established to a reasonable degree of specificity. *Kisela v. Hughes,* 138 S. Ct. 1148, 1153 (2018). "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id.*

Here, Plaintiff must show that it was beyond debate, to someone in the individual Defendants' positions, that they would violate Henige's constitutional rights by their challenged actions. To do so, Plaintiff must "identify a case where a [defendant] acting under similar circumstances . . . was held to have violated [the Constitution]". *White*, 137 S. Ct. at 552. Plaintiff

40

will be unable to do so.  As argued at length above, the individual Defendants did nothing more than exercise their own right to file complaints, perform job duties which included investigating and/or deciding complaints, serve on a Panel, and serve on a Board.

## CONCLUSION

The Defendants request the Court to grant their motion to dismiss and dismiss Henige's Complaint in its entirety.

Dated this 23rd day of March, 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Jeffery A. Simcox
JEFFERY A. SIMCOX
Assistant Attorney General
State Bar #1116949

s/ Gesina S. Carson
GESINA S. CARSON
Assistant Attorney General
State Bar #1055162

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3861 (Simcox)
(608) 266-1672 (Carson)
(608) 267-8906 (Fax)
simcoxja@doj.state.wi.us
carsongs@doj.state.wi.us